UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>PEDRO RIVERA,<br><br>Defendant(s). | Case No. 2:17-CR-256 JCM (CWH)<br><br>ORDER |

Presently before the court is Pedro Rivera's ("Rivera") pro se motion for compassionate release under the First Step Act. (ECF No. 78). Pursuant to the court's General Order 2020-06, the FPD filed a partial supplement to the motion. (ECF No. 79). The United States of America ("government") filed a response (ECF No. 81) and a supplement to its response (ECF No. 83).

**I.   Background**

On December 12, 2014, Rivera was sentenced in the District of Utah to 60 months in prison and two years of supervised release for possession of methamphetamine with intent to distribute. (ECF No. 81 at 2). He was also sentenced to 7 months in prison and three years of supervised release in a parallel case for being a felon in possession of a firearm. (*Id.*).

The court accepted transfer of jurisdiction from the District of Utah for purposes of supervised release. (ECF No. 2). Rivera repeatedly violated his supervised release conditions and appeared at a revocation hearing on July 31, 2020. (ECF No. 77). The court sentenced Rivera to one year and one day in prison after Rivera admitted to using drugs, failing to report to his probation officer, and losing his job after punching a co-worker in the face. (*Id.*). The court was aware of Rivera's shoulder surgery and need for rehabilitation—the gravamen of the instant motion—but denied his request for release or deferred sentencing. (ECF No. 81 at 5). Rivera

**James C. Mahan**
**U.S. District Judge**

did not appeal the sentence and now, less than a month later, moves for compassionate release under the First Step Act.  (ECF No. 78).

While Rivera has been incarcerated at the Nevada Southern Detention Center ("NSDC") in Pahrump, Nevada—a private facility operated by CoreCivic—a novel strain of coronavirus and the resultant respiratory disease, COVID-19, have run rampant, especially in our country's prisons.  The Centers for Disease Control ("CDC") warns that the virus can lead to "hospitalization, admission to the ICU, intubation or mechanical ventilation, or death," especially for older adults and people with certain serious and uncontrolled medical conditions. Centers for Disease Control, *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, (last updated July 28, 2020).[1]

The government has assured courts that the Bureau of Prisons ("BOP") and CoreCivic have taken extraordinary precautions to minimize coronavirus transmission in its facilities.  *See, e.g.*, *United States v. Walters*, No. 216CR00011JADPAL, 2020 WL 3104049, at *2 (D. Nev. June 11, 2020) (listing NSDC's coronavirus precautions which "appear to be working based on the low number of reported cases at this facility"); *see also United States v. Boatwright*, No. 219CR00301GMNDJA, 2020 WL 1639855, at *3, *6 (D. Nev. Apr. 2, 2020) (extensively detailing NSDC's coronavirus precautions).

But despite the BOP's precautions, 1,814 inmates and 673 staff members have tested positive for the virus and 118 inmates have died.  Federal Bureau of Prisons, *COVID-19 Coronavirus*, (last visited September 3, 2020).[2]  These grim numbers are likely understated as well  because testing in BOP's facilities has been "scant except for people who self-report symptoms[.]" *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote citation omitted).  Further, in an affidavit accompanying the instant motion, Rivera claims that CoreCivic's NSDC is not following the precautions that the government is repeatedly touting in court.  (ECF No. 84).

---

[1] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html.

[2] *Available at* https://www.bop.gov/coronavirus/.

James C. Mahan
U.S. District Judge

- 2 -

**II.     Legal Standard**

The court can reduce a prison sentence for "extraordinary or compelling reasons" under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5239 (Dec. 21, 2018). 18 U.S.C. § 3582(c)(1)(A). This statutory authorization is a limited exception to the general rule that a court "may not correct or modify a prison sentence once it has been imposed." *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)).

Before a defendant can move for compassionate release, he must first ask the BOP to do so on his behalf, typically by submitting a request to the warden. 18 U.S.C. § 3582(c)(1)(A). He must then exhaust all administrative rights to appeal the BOP's denial of his request or wait thirty days for his request to go unanswered, whichever comes first. *Id.*

To grant compassionate release, the court must make two findings. First, there must be "extraordinary and compelling reasons" that warrant compassionate release and, second, release must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The applicable Sentencing Commission policy statement lists specific circumstances related to the defendant's medical condition, age, and family circumstances that are extraordinary and compelling.[3] USSG § 1B1.13, cmt. 1. The policy statement also requires the court to consider whether the defendant is a danger to the community based on the factors set forth in 18 U.S.C. § 3142(g). USSG § 1B1.13(2).

District courts have granted compassionate release under circumstances beyond those listed in the policy statement. *United States v. Regas*, No. 391CR00057MMDNA1, 2020 WL 2926457 (D. Nev. June 3, 2020); *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049 (S.D. Cal. May 15, 2020); *United States v. Kesoyan*, Case No. 2:15-cr-236-JAM, 2020 WL 2039028 (E.D. Cal. Apr. 28, 2020). That is because the policy statement was

---

[3] The specific extraordinary and compelling circumstances are: (1) the defendant is either "suffering from a terminal illness" or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care" in prison; (2) the defendant is at least 65 years old, is experiencing deteriorating health, and has served a substantial portion of his sentence; (3) certain family circumstances like the incapacitation of a spouse; and (4) other reasons "as determined by the Director of the [BOP]." USSG § 1B1.13, cmt. 1.

**James C. Mahan**
**U.S. District Judge**

last substantively amended in November 2016, before the passage of the First Step Act in December 2018. Courts have reasoned that Congress's intent in passing the First Step Act—which allows inmates to move for compassionate release when the BOP declines to do so—was to entrust district courts to consider a wider variety of circumstances that could be extraordinary and compelling. *See Arreola-Bretado*, 2020 WL 2535049, at *2. The court agrees that its discretion to grant compassionate release is not strictly limited to the specific circumstances in the Sentencing Commission's policy statement.

Lastly, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). The factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7).

### III. Discussion

On June 23, 2020, Rivera had major surgery on his left shoulder to reconnect several ligaments and tendons. (ECF No. 78). Rivera also recently slipped and fell on his shoulder, causing his bicep muscle to tear. (ECF No. 85). He now asks for compassionate release because NSDC cannot provide the rehabilitation for him to regain full mobility and he fears that his shoulder will not heal properly. (ECF No. 78). As aforementioned, the court already considered Rivera's shoulder condition at his July 31st revocation hearing but denied his request for release or deferred sentencing. (ECF No. 81 at 5).

The government opposes Rivera's compassionate release request.[4] (ECF No. 81). It argues that Rivera's need for shoulder rehabilitation is not comparable to "a terminal illness, a

---

[4] The government initially opposed Rivera's compassionate release because he did not petition the warden before petitioning the court. (ECF No. 81 at 7–9). The government has since withdrawn this assertion. (ECF No. 83). It reasons that because Rivera is detained at NSDC, a private facility operated by CoreCivic and not the BOP, he is not subject to the exhaustion requirement in 18 U.S.C. § 3852(c)(1)(A). (*Id.*).

**James C. Mahan**
**U.S. District Judge**

- 4 -

serious physical condition that substantially diminishes his ability to provide self-care" or any other circumstance in the Sentencing Commission's policy statement. (*Id.* at 11). In any case, Rivera's medical condition is "not as serious as even those where courts have found an inadequate showing for purposes of compassionate release." (*Id.*).

The government also argues that the section 3553(a) sentencing factors militate against releasing Rivera. (*Id.*). It has been "less than one month" since he was sentenced to a revocation term of one year and one day. (*Id.* at 12). His criminal history dates back to 1984 and he continually violated his supervised release conditions. (*Id.*).

The court finds that Rivera's need for shoulder rehabilitation is not an extraordinary and compelling reason that warrants compassionate release. The CDC warns that older adults and people with certain serious and uncontrolled medical conditions have an increased risk of severe illness and death from the coronavirus. Courts considering compassionate release have consistently required inmates to show their vulnerability to these serious complications. *United States v. Hill*, No. 213CR00012GMNPAL, 2020 WL 3060742, at *2 (D. Nev. June 8, 2020) (citing cases). Even a prevalence of the virus in the inmate's facility has not been enough. (*Id.*). Although Rivera's affidavit describing the conditions at NSDC is concerning, he has not shown, much less alleged, that he is at an increased risk of suffering serious coronavirus or non-coronavirus health complications.

As aforementioned, the court will not strictly adhere to the Sentencing Commission's outdated policy statement. Nevertheless, Rivera's need for shoulder rehabilitation is far from the Commission's definition of extraordinary and compelling.

Because the court finds that Rivera's medical condition is not an extraordinary and compelling reason that warrants compassionate release, it will not address the section 3553(a) sentencing factors.

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 5 -

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Rivera's motion for compassionate release under the First Step Act (ECF No. 78) be, and the same hereby is, DENIED.

DATED September 10, 2020.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge